UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Paul Marinaccio, Sr., Accadia Site
Contracting, Inc., and Midway
Enterprises, Inc.,

                                      Plaintiffs,


        -v.-                                   1:02-CV-00831
                                             (NPM)

Joseph H. Boardman, in his official
capacity; James B. Cantwell, Steven F.
Lewis, James F. Tynan and Robert E.
O'Connor, in their official and individual
capacities, as employees of the State of
New York, by and through, The New
York State Department of Transportation,

                                        Defendants.

_____

APPEARANCES:                  OF COUNSEL:

GRESENS & GILLEN, LLP         JOSEPH J. MANNA
Attorneys for Plaintiffs            JAMES W. GRESENS
12 Fountain Plaza
Suite 510
Buffalo, New York 14202


OFFICE OF THE NEW YORK STATE   MICHAEL G. McCARTIN
  ATTORNEY GENERAL
Attorneys for Defendants
The Capitol
Albany, New York 12224


Neal P. McCurn, Senior District Judge

MEMORANDUM-DECISION and ORDER

## I.      Introduction

Presently before the court is a motion by plaintiffs, Paul Marinaccio, Sr. ("Marinaccio"), Accadia Site Contracting, Inc. ("Accadia Site"), and Midway Enterprises, Inc. ("Midway") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 60(b)(3) seeking relief from this court's April 19, 2005 order insofar as it awarded summary judgment to defendants, James B. Cantwell, Steven F. Lewis, James F. Tynan ("Tynan") and Robert E. O'Connor ("O'Connor") (collectively, "Defendants") on Plaintiffs' Due Process and First Amendment claims set forth in Counts I, II, III and V of their Amended Complaint.  Plaintiffs further seek sanctions in the form of attorney's fees and costs associated with bringing the present motion and as a result of Defendants' "willful failure to disclose key documents" during discovery.  Mem. of Law in Supp. of Pls.' Rule 60(b)(3) Mot. at 1; Dkt. No. 168.

## II.     Background

Although familiarity with the history of this case is presumed, see Marinaccio v. Boardman, No. 02-CV-831, 2005 WL 928631, at *1-8 (N.D.N.Y. April 19, 2005), a brief discussion of the background of the present motion is warranted.

On April 19, 2005, this court issued a Memorandum-Decision and Order which, among other things, granted Defendants' motion for summary judgment as to four of Plaintiffs' claims for relief.  Count V of Plaintiffs' Amended Complaint set forth a claim under the First Amendment to the United States Constitution, and Counts I through III set forth claims under the Due Process Clause of the Fourteenth Amendment, all of which were predicated upon civil rights claims pursuant to 42 U.S.C. § 1983.  Plaintiffs also based these claims on the equivalent provisions of the New York State Constitution.  This court concluded that Defendants were entitled to

1

qualified immunity as to Count V because it found that Plaintiffs did not have a clearly established First Amendment right at the relevant time, to wit, the date Attachment A to the Military Road contract was executed. See Marinaccio, 2005 WL 928631, at *16. Specifically, the applicable decisional law at the relevant time did not provide First Amendment protection to mere bidders for government contracts. See id. at *14-15, citing Board of County Commissioners v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342 (1996). This court held that, because Midway did not have a pre-existing commercial relationship with the New York State Department of Transportation ("DOT") at the time Attachment A was executed, Defendants could not be deemed to have violated a clearly established First Amendment right. See id.

As to Plaintiffs' Due Process claims, this court dismissed same because it found Plaintiffs could not prove the deprivation of a protectible property or liberty interest. Specifically, this court noted that the applicable law does not recognize a vested property interest in the low bid on a public contract, and therefore, Plaintiffs suffered no deprivation of a property interest regarding the Master's Edge subcontract, the Williams Road contract, or the Route 33 contract. See Marinaccio, 2005 WL 928631, at *17. Moreover, Midway suffered no deprivation of property associated with the Military Road contract, since it was awarded same. See id. at *18. Likewise, as to the alleged deprivation of a liberty interest, this court found that Plaintiffs could not establish the requisite deprivation of a "legal right or status" accompanying the alleged injury to reputation. See id. at *20-21.

In September 2005, this court heard and considered motions in limine by all parties. Said motions were filed in anticipation of a jury trial in this action, originally scheduled to commence September 6, 2005. At that time, counsel for Defendants informed the court regarding the alleged late disclosure of certain items

by Plaintiffs.  After hearing argument from both parties regarding same, and in consideration thereof, the court established a schedule for extended discovery, and allowed Plaintiffs ample time to file a motion pursuant to Rule 60 if they chose to do so.  Plaintiffs filed such a motion on November 28, 2005, and submitted copies of recently discovered documents in support of same.  Plaintiffs contend that these documents: (1) create a question of fact as to whether they were deprived of a property interest in violation of their Due Process rights, and (2) establish that a pre-existing commercial relationship existed between Plaintiffs and the DOT such that Defendants should have known that the execution of Attachment A to the Military Road contract violated a clearly established First Amendment right.  Therefore, Plaintiffs ask that the court reinstate Counts I through III of their Amended Complaint, and allow said claims to be submitted to a jury.  As to Count V, Plaintiffs ask in the first instance that they be awarded summary judgment, and in the alternative that said claim be submitted to a jury.

Plaintiffs allege three categories of documents were not timely produced: "contractor files," certain DOT policy documents, and a generic group of documents contained by "20 to 25 boxes" located in the Buffalo, New York DOT office.

According to Plaintiffs, a handful of "important and significant documents" responsive to earlier discovery demands were not disclosed until September 2005, during pretrial preparations.  See Aff. of Joseph J. Manna, Nov. 28, 2005, ¶ 10, Dkt. No. 168 ("Manna Aff.").  Defendants explain that during preparation for trial, Shirley Clark, an analyst for the DOT who was named as a witness for Plaintiffs, met with Defendants' attorney, Michael McCartin ("McCartin") for the very first time.  See Decl. Of Michael McCartin, Dec. 19, 2005, ¶ 3, Dkt. No. 170 ("McCartin Decl.").  At that time, Ms. Clark produced a file which contained some documents that had

been produced during discovery and others that McCartin had never seen before. See id.  DOT attorney Nancy Jones, who "was assigned to compile some of the documents in response to [P]laintiffs' extensive demands[,]" explained that during the original discovery period, she was unaware of the existence of this file, and unbeknownst to her, said file was maintained in the Pre-Award Unit of the DOT's "Main Office" as opposed to the other "contractor files" for Accadia Site, which were in the possession of the legal services division.  See Decl. of Nancy E. Jones, Dec. 19, 2005, ¶¶ 8, 10-11, Dkt. No. 170 ("Jones Decl.").  In any event, at some point during the next several days after McCartin met with Ms. Clark, certain documents, among which are those identified in Exhibits I, K, L, and M to the Manna Affidavit, were provided to Plaintiffs by email and facsimile.  See id.

Also at that time, McCartin informed Manna of certain boxes of other material located in the Buffalo, New York DOT office.  See id.  McCartin asserts he learned of the existence of this material from DOT Claims Engineer, Paul Degen ("Degen"). See id.  Apparently, these are the "20 to 25 boxes" referred to by Manna in his attorney affidavit.  See Manna Aff. ¶ 14.  In his reply affidavit, Manna admits the only relevance of Defendants' failure to disclose the documents in the referenced 20 to 25 boxes is to demonstrate Defendants' bad faith.  See Reply Aff. of Joseph J. Manna, Dec. 23, 2005, ¶ 19, Dkt. No. 173 ("Manna Reply Aff.").  Since some of those documents were produced, Manna claims, Defendants must have combed through the entire set of boxes in order to select certain of the documents for production.  See id.  McCartin asserts that when he learned of documents which were responsive to Plaintiffs' discovery demands, he produced them, and therefore did not act in bad faith.  See McCartin Decl. ¶ 3.

Manna affirms that during the extended discovery period he spoke with

4

Degen.  See Manna Aff. ¶ 12.  According to Manna, Degen revealed that he generally oversees document production in all DOT litigation, but after only recently being asked to assist in this case, he discovered that many documents responsive to Plaintiffs' earlier demands had not been produced.  See Manna Aff. ¶¶ 12-13. Manna alleges that Degen admitted someone hand picked certain documents to disclose, but withheld others.  See id. ¶ 13.  In support of Defendants' opposition to the present motion, Degen states that he was asked to work on this litigation in August 2005 in order to prepare for trial, but denies the aforementioned statements attributed to him by Manna.  See Decl. of Paul E. Degen, P.E., Dec. 19, 2005, ¶¶ 3, 9, Dkt. No. 170 ("Degen Decl.").  According to Degen, prior to this litigation, he never worked on a federal civil rights lawsuit, but instead focused on litigation support for New York Court of Claims actions.  See Degen Decl. ¶ 10.  Moreover, while Degen admits telling Manna that DOT employees would have removed privileged and unresponsive documents from production during the earlier discovery period, Degen states that he "in no way said or implied that DOT personnel 'hand-picked' documents improperly."  Id. ¶ 12.

Also previously undisclosed were Plaintiffs' "contractor files" located at DOT's office in Albany, New York, according to Manna.  See Manna Aff. ¶ 15. Manna affirms he learned from Degen that "contractor files" are maintained for every contractor who performs work for DOT.  See id. ¶ 16.  However, according to Manna, while some of the documents in Plaintiffs' contractor files were produced during earlier discovery, most of them were not produced until October 2005.  See id. ¶ 18; Manna Reply Aff. ¶ 13.

In February 2004, Plaintiffs served their First Request for Documents upon Defendants, wherein "[a]ll documents relating to any investigation and/or inquiries

concerning [each plaintiff]" were requested.  Ex. A to Manna Aff., ¶¶ 17-19.  In response, Defendants stated, "[. . .] to the extent that any such non-privileged documents or items exist, copies will be provided to the plaintiffs as they are kept in the usual course of business."  Ex. B to Manna Aff., ¶¶ 17-19.  Also included in Plaintiffs' First Request for Documents is a demand for "[a]ll documents and/or communications by or to the NYSDOT from 1995 through and including 2004 concerning [. . .]" Marinaccio, Accadia Site, Accadia Enterprises, Inc., and Midway. See Ex. A to Manna Aff., ¶ 31.  Defendants objected to same as overly broad but stated that notwithstanding said objection, they would produce non-privileged documents that "may be responsive" to the request.  Ex. B to Manna Aff. ¶ 31. McCartin alleges that on April 9, 2004, he provided Plaintiffs with 2000 pages of documents responsive to their first request.  See McCartin Decl. ¶ 6; Ex. B, Dkt. Nos. 170, 171.  According to McCartin, included in these documents were copies of Uniform Contracting Questionnaires (DOT form CCA-1) for Midway and Accadia Site, each of which reflects that the DOT cross-referenced those companies with other Marinaccio-owned companies who previously were awarded DOT contracts. See McCartin Decl. ¶ 6; Ex. C.

Plaintiffs served their Third Request for Documents upon Defendants in late April 2004, requesting, among other things, "[a]ll documents and/or communications concerning the Route 33 Contract and defendants' final determination that Accadia Site was not a responsible bidder for same, including but not limited to: (1) internal and/or external e-mails and/or memoranda; and (2) copies of all drafts of the April 8, 2004 determination of the Contract Review Unit of the New York State Department of Transportation."  Ex. C to Manna Aff., ¶ 5.

On August 20, 2004, Plaintiffs submitted their Fourth Request for Documents,

6

but, Manna alleges, Defendants refused to respond to this discovery demand.  <u>See</u> Manna Aff. ¶ 23; Ex. E.  McCartin claims this request was submitted after the court-ordered time for discovery had elapsed and therefore, Defendants' refusal to respond to said request was not done in bad faith.  <u>See</u> McCartin Decl. ¶ 5; Ex. A.  On September 23, 2004, Defendants responded to Plaintiffs' Fourth Request for Documents, objecting to each specific document request as untimely, and referring to the Uniform Pretrial Scheduling Order, which among other things, set forth a discovery deadline of July 1, 2004.  <u>See</u> id., citing Dkt. No. 55.  However, on May 24, 2004, Magistrate Judge Homer granted Defendants' request for a 60-day extension of the discovery deadline, bringing the new deadline to September 1, 2004.  <u>See</u> Dkt. Nos. 70 & 71.  In any event, on October 25, 2004, Defendants did reply to Paragraph 4 of Plaintiffs' Fourth Request for Documents, which reiterated requests made during depositions in July 2004, and included the only demand relevant to the present motion.  <u>See</u> Ex. E to Manna Aff.  Regarding this particular demand, which was for "referral lists" from 2001 through present, Defendants replied that all such records were produced, except that "no such records presently exists (sic) for the years 2001 or 2002."  Id.

By their present motion, Plaintiffs argue that Defendants' failure to timely produce  documents in the "contractor files" as well as certain DOT policy documents prevented them from fully and fairly presenting their Due Process and First Amendment claims.

## III.   Discussion

### A.     Rule 60(b)(3) Standard

Rule 60(b)(3) allows the court to "relieve a party . . . from a final judgment, order, or proceeding for . . . fraud . . . misrepresentation, or other misconduct of an

adverse party." Fed. R. Civ. P. 60(b)(3).  While the court may use its sound discretion to decide a motion pursuant to Rule 60(b), see Stewart Park & Reserve Coal. Inc. (SPARC) v. Slater, 374 F.Supp.2d 243, 253 (N.D.N.Y. 2005), such a motion is "generally not favored and is properly granted only upon a showing of exceptional circumstances[,]" Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs., 228 F.R.D. 125, 128 (N.D.N.Y. 2005), quoting United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001).   In order to succeed on a Rule 60(b)(3) motion, the moving party has the burden to demonstrate by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation or other misconduct, see Catskill Dev., L.L.C. v. Park Place Entm't Corp., 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003), citing, inter alia, Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989), and that the adverse party's conduct prevented the movant from fully and fairly presenting its case, see State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004).  The court is also mindful that when deciding a Rule 60(b) motion, it must balance the policy favoring hearing the merits of a case with the policy favoring finality of judgments.  See SPARC, 374 F.Supp.2d at 253.

### 1.      Fraud, Misrepresentation, or Other Misconduct

Failure to produce documents requested in discovery may, in certain circumstances, be held to constitute misconduct within the purview of Rule 60(b)(3). See Travelers Cas., 228 F.R.D. at 132, citing Catskill Dev., 286 F.Supp.2d at 314-15. In fact, it is clear that a party's intent associated with such failure is irrelevant to the determination of whether it engaged in misconduct.  See Catskill Dev., 286 F.Supp.2d at 314-15.  "'Misconduct' does not demand proof of nefarious intent or purpose as a prerequisite to redress [. . .]." Id., quoting Anderson v. Cryovac, Inc.,

8

862 F.2d 910, 923 (1ˢᵗ Cir. 1988).  Thus, a party who accidentally fails to comply with a discovery request, especially where such failure was avoidable, is subject to the reach of Rule 60(b)(3).  See id. at 315, citing Anderson, 862 F.2d at 923.

Here, it is clear that Defendants failed to provide documents requested during the court-ordered discovery period.  It is also clear, based on the declarations of DOT attorney Jones and DOT engineer Degen, that mistakes were made which contributed to same.  The court need not decide that such failure was deliberate in order for Plaintiffs to prevail on their motion, however.[1]  See Catskill Dev., 286 F.Supp.2d at 315.  All that is required is what has been shown, which is that Defendants accidentally failed to comply with Plaintiffs' discovery requests, and such failure was avoidable.  While the court recognizes bureaucratic and administrative issues may have contributed to the mistakes which were made, that does not preclude a finding of misconduct on behalf of Defendants here.  Nonetheless, even having established that Defendants engaged in the requisite misconduct pursuant to Rule 60(b)(3), Plaintiffs still must establish that said misconduct prevented them from fully and fairly presenting their case in order to prevail on their motion.

## 2.    Plaintiffs' Ability to Fully and Fairly Present Their Case

In order to show that they were prevented from fully and fairly presenting their case, it is significant that, "[P]laintiffs need not show that the outcome [of the motion for summary judgment] would have been different absent [D]efendant[s'] misconduct."  Catskill Dev., 286 F.Supp.2d at 316 (internal citations omitted).

---

[1] Plaintiffs repeatedly contend Defendants' failure to disclose documents was in bad faith and in wilful violation of discovery rules.  See, e.g., Manna Aff., ¶ 28; Ex. F.  To the extent Plaintiffs purport to advance such arguments in support of their motion for relief from summary judgment, however, the court need not consider same because a lesser degree of intent is sufficient to satisfy the requisite misconduct under Rule60(b)(3).

9

Instead, Plaintiffs need only "show that the undisclosed material either would have been important as evidence at trial or would have been a valuable tool for obtaining meaningful discovery." Id., citing Anderson, 862 F.2d at 926. However, Plaintiffs will not meet this burden where the recently discovered evidence "turn[s] out to be cumulative, insignificant, or of marginal relevance." Id., citing Anderson at 924.

Here, all of the evidence Plaintiffs rely on in support of their Rule 60(b)(3) motion falls within one of these categories. However as an initial matter, the court notes that Plaintiffs do not seek reinstatement of any claim based on the contents of handwritten notes from the Military Road Contract Review Unit ("CRU") meeting, which, Plaintiffs argue, are evidence that the public forums provision in the Military Road contract was intended to prevent Plaintiffs from conducting such forums. See Manna Aff. ¶ 32; Ex. G. Instead, Plaintiffs request the opportunity at trial to develop issues raised by said document. See id. ¶ 33. Also, Plaintiffs submit certain additional handwritten notes, which they allege "appear to memorialize, among other things, admissions made by some of the defendants." Manna Aff. ¶ 39; Ex. L. Plaintiffs do not specify the admissions, nor explain how they relate to their previously dismissed First Amendment and Due Process claims, but merely state they have been denied the opportunity to question Defendants regarding same. To the extent the contents of these documents are relevant to the remaining causes of action, Plaintiffs will be allowed to utilize them at trial.

Next, Plaintiffs argue that a set of handwritten notes from the Williams Road CRU meeting provides evidence that O'Connor had a vendetta against Marinaccio. See id. ¶ 35; Ex. H. The court need not consider this document in its analysis of the present motion for two reasons. First, the issue of whether O'Connor had a vendetta against Marinaccio is irrelevant to the issues of whether Plaintiffs had a property

interest in DOT contracts, or whether Plaintiffs had a pre-existing commercial relationship with the DOT.  Their lack of relevance notwithstanding, the notes are also duplicative of previously received evidence.  The court had before it for consideration of the motion for summary judgment a transcript of the referenced meeting.  Because the submitted notes reflect what was said at the meeting, and nothing more, they are cumulative, and will not assist Plaintiffs to meet their burden here.

Plaintiffs argue that several other of the newly discovered documents warrant reinstatement of their Due Process claims, because at the very least they create a question of fact as to whether Plaintiffs had a property interest in certain DOT contracts.  These documents include an unsigned, undated DOT memorandum from the "Pre-Award Evaluation Unit" to the "Construction Contracts and Miscellaneous Agreements Unit" for the Williams Road contract which states, "[. . .] we find this firm to be a responsible bidder and recommend the award of the listed project to them."  Ex. I to Manna Aff.; ¶ 36.  In addition, Plaintiffs submit a "Contract Review Checklist" signed on February 21, 2001 by "S. Clark" which indicates that Midway "appears to be responsible".  Ex. J to Manna Aff.  Another "Contract Review Checklist" signed by "S. Clark" and dated September 24, 2001, reflects the conclusion that Midway "appears to be responsible".  Ex. K to Manna Aff.  Both documents list Accadia Enterprises, Inc. and Strickler Enterprises as affiliates to, or joint ventures of, Marinaccio.  See Exs. J & K to Manna Aff.

Also submitted by Plaintiffs are a "Questionnaire Checklist" signed by "S. Clark" and an internal DOT memorandum.  See Ex. M to Manna Aff.  The undated DOT memorandum is  from the "Pre-Award Evaluation Unit" and states that they "find [Accadia Site] to be a responsible bidder and recommend the award of the

[Route 33] project to them." Ex. M to Manna Aff.  A handwritten note also appears on the memorandum and states, "No Award per CRU 5/28/03."  See id.  The questionnaire checklist is dated May 28, 2003 and reflects that "further investigation" is needed regarding Accadia Site.  See id.  A handwritten note states, "This appears to be a successor firm to Accadia Enterprises, Inc., and Midway Enterprises, Inc.  Recommend CRU Mtg. on first-time low bidder."  Id.

The significance of these documents is specious.  In the first instance, the language used is particularly equivocal.  For example, we learn that the Pre Award Evaluation Unit "recommend[s]" the award of certain contracts to Plaintiffs, see Manna Aff., Exs. I & M, and that Ms. Clark, who is not a member of the CRU, concludes that Midway "*appears* to be responsible" see id., Exs. J & K (emphasis added).  More importantly however, it is the CRU, not the Pre Award Evaluation Unit or Ms. Clark, that has been delegated the authority to determine whether the lowest bidder for a DOT contract is responsible.  See N.Y. High. Law § 38 (McKinney 2006); Harrison & Burrows Bridge Constructors, Inc. v. Cuomo, 743 F.Supp. 977, 985 (N.D.N.Y. 1990).  Therefore, the contents of these documents do not create a question of fact regarding whether Plaintiffs had a property interest in any DOT contract, nor would they have been useful to Plaintiffs in any significant way in presenting their Due Process claims.

Plaintiffs submit additional previously undisclosed documents which they contend also create a question of fact as to whether they had a property interest in the award of several DOT contracts.  Plaintiffs argue these documents suggest what they claim is the DOT's unlawful policy of debarring contractors without following its procedure for determining whether a low bidder for a DOT project is responsible within the definition of the New York Highway Law.  See Manna Aff. ¶¶ 44-61; Exs.

12

P-V.   The first document includes what appear to be instructions for approving a subcontractor, which direct the "Contracts and Estimate Engineer" to check, among other things, a "Debarred Bidders List - aka Referral List[.]"  Ex. P to Manna Aff.  The document defines same as "[a] confidential list periodically generated by Main Office that includes companies and individuals who may have violations or be a cause for concern to the Department" and instructs that "[i]f a firm appears on the list the Region is required to obtain approval from Main Office Construction prior to approving their status as a subcontractor."  Id.

The next submission includes handwritten notes by an unknown author, which appear to be further instructions regarding the approval of a subcontractor, and refer to something called a "watch list."  See Ex. Q to Manna Aff.; ¶ 46.  Specifically, the notes state, "If on a Contractor's Card in the Subcontractor Card file it indicates a firm is on the watch list or has been disbarred (sic) I can not approve until I get clearance from Steve George in the Const. Division in Albany."  Id.  Plaintiffs also submit a "referral list" for the month of January 2002, which lists many contractors and their "date on" the list.  See Ex. R to Manna Aff.  Plaintiffs note that "Accadia Enterprises Inc (DBA: Marinaccio, Paul Sr/Midway Enterpri" is listed with a "date on" of 11/1/99, and "Marinaccio, Paul Sr. (DBA: Midway Enterprises Inc/Accadia Ente" with a "date on" of January 1, 2002.  See Manna Aff. ¶ 49; Ex. R.

In addition, Plaintiffs submit a DOT memorandum and attachment dated October 3, 2005 with the subject heading, "Contractor/Subcontractor 'Referral List'".  See Ex. S to Manna Aff.; ¶ 50.  According to the memorandum, the attachment is "a partial list of companies who may be undergoing anti-trust or other legal action, or are affiliated with a firm undergoing anti-trust or other legal action, or who may have labor, financial, or performance problems."  Id.  The memorandum

13

instructs that the list is confidential, and solely for the use of DOT employees whose responsibilities include "reviewing and/or approving contracts or subcontracts." Id. Said employees are to contact DOT's Office of Legal Affairs if any of the listed companies appear as a low bidder on any DOT project. See id. However, the memorandum states that "[f]irms on the list are not necessarily non-responsible; in most cases, more research will be necessary prior to an approval for a contract or subcontract." Id. The attached list includes columns reflecting the date a company is placed on the list, the date it is expected to be removed from the list, and a review date. Each of the plaintiffs in this action appear on the list. Marinaccio, Midway, and Accadia Site were placed on the list on November 1, 1999, April 1, 2002, and September 1, 2003, respectively. Each has a "review date" of April 1, 2009, but no expected date of removal. According to Plaintiffs, this disproves Defendants' claim that each of Plaintiffs' bids were evaluated on a case-by-case basis. See Manna Aff. ¶ 50. Jones asserts that "the referral list [] includes companies that because of past performance problems or lack of experience are not debarred but are listed by DOT to assure that proper steps are taken so past problems do not reoccur." Jones Decl. ¶ 18. Another purpose of the list, according to Jones, is to be sure companies that have been deemed to be debarred by "the federal government or state Department of Labor" are not listed as contractors on state jobs. See id.

Despite the poor choice of language identifying some contractors as "debarred," nothing in these documents suggests that contractors on the referenced lists are prohibited from being awarded a DOT contract or subcontract. Instead, it is clear their purpose is merely to alert certain DOT officials of potential issues associated with the contractors in order to allow additional vetting of their bids before an award may be made. Neither the existence of such lists nor their contents

14

is evidence that Defendants acted unlawfully or that Plaintiffs should have been awarded the contracts at issue.

Plaintiffs also submit copies of two recently discovered DOT policy directives: one dated November 11, 1984 regarding "Construction Division Review of Contractor Experience and Performance" and another dated November 25, 1997 regarding the "Pre-Award Evaluation Unit Processing and Review of Contractor/Subcontractor Information." Exs. T & U to Manna Aff. Plaintiffs contend DOT employee Shirley Clark testified that each directive was in effect during the relevant time period, but do not submit a transcript of said testimony. See Manna Aff. ¶¶ 51, 59. The November 1984 policy directive states that the public's interest in a competitive bidding process overrides any risk to the DOT of a contractor defaulting on a project. See Ex. T to Manna Aff. The policy directive continues to state that "a finding of non-responsibility on the basis of experience and/or performance would be a rare exception, limited to situations of previous unacceptable performance, default, bankruptcy, or an obvious large discrepancy between the requirements of a project and the firm's basic capabilities." Id. Such a finding, according to the directive, "should be made on the basis of relatively recent events of significant proportions." Id. Plaintiffs contend that this policy directive is relevant to whether they had a property interest in the Williams Road and Route 33 contracts. See Manna Aff. ¶ 58. Specifically, Plaintiffs contend that Defendants erroneously relied on Midway's lack of experience when denying it the Williams Road contract, and likewise erroneously relied on "old, historical events involving Marinaccio" when it denied Accadia Site the Route 33 contract. Manna Aff. ¶¶ 54, 58.

In their opposition papers, Defendants correctly note that Executive Order 170,

15

enacted in 1993, supercedes the 1984 policy directive cited by Plaintiffs. <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 9, § 4.170 (2005). Executive Order 170, entitled, "Establishing Uniform Guidelines for Determining the Responsibility of Bidders" states that agencies such as the DOT "[. . . ] shall give due consideration to any credible evidence or reliable information that the *past or current* record of a bidder or proposed subcontractor includes [. . .]" among other things, criminal conduct or grave disregard for the personal safety of others. Id. at § 4.170(2)(3) (emphasis added). The record on summary judgment reveals that in addition to Midway's lack of experience, the Williams Road CRU also took into consideration Marinaccio's prior history of unprofessional behavior, including the 1999 Matter incident, when it denied Midway's bid. <u>See</u> <u>Marinaccio</u>, 2005 WL 928631, at *2. The Route 33 CRU cited Marinaccio's prior behavior, as well as his 2003 gun conviction, in support of its decision to deny Accadia Site the contract bid. <u>See</u> <u>id.</u> at *8. As such, Defendants did not unlawfully deny Midway and Accadia Site the Williams Road and Route 33 contract bids, respectively, and the 1984 policy directive does not suggest otherwise.

Plaintiffs interpret the November 1997 policy directive to set forth a DOT procedure of "maintaining a continuing relationship with previous bidders and contractors by requiring them to maintain a current CCA-1 on file." Manna Aff. ¶ 60. DOT form CCA-1 is a "New York State Uniform Contractor's Questionnaire." Ex. P to Manna Aff. DOT employee Shirley Clark testified that the current year's CCA-1 forms as well as those from two years prior are kept on file for purposes of verifying data for contractors the DOT expects to do business with in the future. <u>See</u> Dep. of Shirley Clark, November 9, 2005, 25:9-17, at Ex. V to Manna Aff. Plaintiffs argue that this evidence would have been helpful to show their property interest in DOT contracts based on their continuing relationship with the DOT. <u>See</u> Manna Aff.

¶ 61.  However, nothing in this policy directive creates a question of fact regarding whether Plaintiffs were deemed responsible by the CRU, thus granting them a property interest in any of the DOT contracts at issue.  Thus, for the aforementioned reasons, Plaintiffs are not entitled to reinstatement of any of their Due Process claims.

Plaintiffs next argue that certain newly discovered documents provide evidence which warrants an award of summary judgment in their favor as to their First Amendment claim in Count V of the Amended Complaint.  At the very least, Plaintiffs contend, they are entitled to reinstatement of this claim so that it may be submitted to a jury.  Plaintiffs submit two handwritten notes, which they claim show a pre-existing commercial relationship between the DOT and Marinaccio's companies.  See Exs. N & O to Manna Aff.; ¶¶42-43.  The first note is entitled, "Accadia Enterprises, Inc." and refers to Accadia Site and Midway.  See Ex. N to Manna Aff.  The second note is entitled, "Referral" and states "Accadia Enterprises . . . perf. problems - R.5 affiliate of [. . . Midway . . . ."  Ex. O to Manna Aff.  Plaintiffs claim these notes, in addition to the contract review checklists and questionnaire checklist, see Manna Aff. Exs. J, K & M, are evidence that the DOT cross-referenced Marinaccio's companies in order to determine whether another of his companies was responsible.  Thus, Plaintiffs conclude, they have established a pre-existing relationship between the DOT and Marinaccio's companies sufficient to warrant First Amendment protection pursuant to Umbehr.  See Marinaccio, 2005 WL 928631, at *14, citing Umbehr, 518 U.S. at 685.

Defendants correctly argue that the newly discovered evidence relied on by Plaintiffs is duplicative of evidence which was previously before the court for consideration of Defendants' motion for summary judgment.  Specifically, Midway's

17

form CCA-1, which referenced Accadia Enterprises as an affiliated company, was provided to Plaintiffs during the original discovery period, and was submitted to the court by Defendants in support of their motion for summary judgment.  See Decl. of Marie A. Corrado, Nov. 11, 2004, Ex. C, Dkt. No. 84.  Further, the decision of the Route 33 CRU, which referenced contracts completed by Accadia Enterprises, another of Marinaccio's companies, also produced during the original discovery period, and was also submitted by Defendants in support of their summary judgment motion.  See id. at Ex. Q.  As such, the newly discovered evidence Plaintiffs cite in support of their Rule 60(b)(3) motion is cumulative, and does not satisfy Plaintiffs burden in relation thereto.  Therefore, Plaintiffs are not entitled to reinstatement or an award of summary judgment as to Count V of their Amended Complaint.

C.     **Motion for Sanctions**

In addition to their Rule 60(b)(3) motion, Plaintiffs move for an order imposing sanctions on Defendants in the form of attorney's fees and costs associated with bringing the present motion, including travel costs.  Defendants oppose, citing this court's denial of Plaintiffs' previous request for the same relief, see Dkt. Nos. 164 & 166, and Defendants' lack of bad faith in failing to provide documents responsive to Plaintiffs' original discovery requests.

As previously stated, the court declines to find that Defendants acted deliberately to thwart the discovery process, only that their actions constituted misconduct within the bounds of Rule 60(b)(3) because they accidentally failed to produce documents, even though said accident may have been avoidable.  Likewise, the court declines to conclude that Defendants' actions constitute bad faith.  Moreover, Defendants are correct that the court previously denied Plaintiffs' request for the same relief they seek by the present motion.  The court declines to retract its

18

position, and hereby denies Plaintiffs' motion for attorney's fees and costs with leave to apply for same under 42 U.S.C. § 1988 if applicable.

## IV.   Conclusion

Because Plaintiffs have failed to meet their burden to show that Defendants' misconduct prevented them from fully and fairly presenting the claims set forth in Counts I, II, III, and V of their Amended Complaint, Plaintiffs' motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(3) is DENIED.  Plaintiffs' motion for sanctions in the form of attorney's fees and costs is likewise DENIED with leave to apply for same under 42 U.S.C. § 1988 if applicable.


IT IS SO ORDERED.


DATED:      June 26, 2006
            Syracuse, New York

Neal P. McCurn
Senior  U.S. District Judge

19