UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Paul Marinaccio, Sr., Accadia Site
Contracting, Inc., and Midway
Enterprises, Inc.,

                                   Plaintiffs,

   -v.-                                                                         1:02-CV-00831
                                                                               (NPM)

Joseph H. Boardman, in his official
capacity; James B. Cantwell, Steven F.
Lewis, James F. Tynan and Robert E.
O'Connor, in their official and individual
capacities, as employees of the State of
New York, by and through, The New
York State Department of Transportation,

                                   Defendants.
_____

APPEARANCES:                             OF COUNSEL:

For Plaintiffs:

Paul Marinaccio, Sr., Pro Se
c/o Accadia Site Contracting, Inc.
5636 Transit Rd.
Depew, NY 14043

For Defendants:

Office of the New York State           Michael G. McCartin
 Attorney General                          David Cochran
The Capitol                                    Belinda Wagner
Albany, New York 12224


Neal P. McCurn, Senior District Judge

## MEMORANDUM-DECISION and ORDER

## I.  Introduction

Presently before the court is plaintiffs' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59.  Defendants oppose.  The motions have been considered on the papers submitted without oral argument.  For the reasons that follow, plaintiffs' motion is denied.

## II.  Background

A jury trial was held in this action from October 4 through 27, 2006 in Syracuse, New York.  At the close of proof, two claims remained for the jury's consideration: a claim for the violation of plaintiffs' first amendment rights to free speech and association, and a state law tort claim for tortious interference with prospective advantage, also known as tortious interference with business relations. In addition, the jury was charged with resolution of defendants' qualified immunity affirmative defense to the First Amendment claim.  At that time, plaintiffs moved for judgment as a matter of law on both claims pursuant to Fed. R. Civ. P. 50(a), and the court reserved judgment.  The jury returned a verdict in favor of defendants on the state tort claim.  As to the First Amendment claim, the jury found that defendants violated plaintiffs' rights, but were entitled to qualified immunity.  Plaintiffs contend that it was error to submit the question of qualified immunity to the jury, as there were no questions of fact for their resolution.  Even if it was not error to submit the qualified immunity defense to the jury, plaintiffs argue they are entitled to judgment as a matter of law on the First Amendment claim because no reasonable juror could have determined that defendants did not

1

know their actions violated federal law.  Plaintiffs also argue they are entitled to judgment as a matter of law as to liability, and therefore a new trial as to damages, on the state law claim because no reasonable juror could have concluded that defendants did not tortiously interfere with plaintiffs' relationship with the New York State Department of Transportation ("DOT").  In the alternative, plaintiffs seek a new trial as to both claims.

### III.  Discussion

Where, as here, a verdict was rendered and a party renews a motion for judgment as a matter of law, the court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law.  See Fed. R. Civ. P. 50(b). "Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149, 120 S.Ct. 2097, 2109 (2000), quoting Fed. Rule Civ. Proc. 50(a).  The standard for deciding a motion for judgment as a matter of law pursuant to Rule 50 mirrors that for analysis of a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  See Reeves, 133 U.S. at 150. As such, the court, in deciding a motion for judgment as a matter of law, must review all of the evidence in the record, and must draw all reasonable inferences in favor of the non-moving party.  See id.  "A jury verdict should be set aside only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." Kosmynka v. Polaris Industries, Inc., 462 F.3d 74, 79 (2d Cir. 2006) (quoting

3

Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir.1992) (ellipsis in original) (internal quotations and citations omitted)).

When deciding a Rule 59 motion for a new trial, the district court may grant relief "only if it concludes that the jury reached 'a seriously erroneous result' or that 'the verdict is a miscarriage of justice.'"  Exodus Partners, LLC v. Cooke, No. 04-Civ.-10239, 2007 WL 120053, at *12 (S.D.N.Y. Jan. 17, 2007) (quoting Manley v. Ambase Corp., 337 F.3d 237, 245 (2d Cir.2003)).  However significant this burden may be for the movant, the standard on a Rule 59 motion for a new trial is "less stringent than the Rule 50 standard for judgment as a matter of law in at least 'two significant respects.'"  Id., (quoting Manley, at 244).  First, even where there is substantial evidence to support a jury's verdict, a court may grant a new trial under Rule 59(a).  See id., (citing Manley, 337 F.3d at 244).  Second, "a court considering a Rule 59 motion is free to weigh the evidence itself, and need not view it in the light most favorable to the party that prevailed at trial."  Id. (quoting Manley, at 244-45).  Nonetheless, it is a rare occasion when a district court should disturb a jury's assessment of a witness's credibility.  Id., (citing Brewster v. City of Poughkeepsie, 447 F.Supp.2d 342, 347 (S.D.N.Y.2006)).

### A.  First Amendment Claim

Plaintiffs alleged that defendants violated their rights to freedom of speech and association under the First Amendment when they conditioned the award of the Military Road contract on certain conditions, contained in Attachment A to said contract.

The First Amendment, which applies to the states through the Fourteenth Amendment, provides that, among other things, "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people

peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.  When deciding whether government action violates the First Amendment right to free speech, the threshold question is whether the underlying speech is constitutionally protected.  The question of whether speech is protected by the First Amendment is one of law, not fact.  See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  The court determined as a matter of law that the speech at issue here is protected under the First Amendment.  The jury was charged accordingly.

The next question is whether the government's restriction of speech is content-based or content-neutral.  If the restrictions are content-based, Defendants may only avoid liability if they can prove, under the strict scrutiny test, that said restrictions are not invalid because they (1) serve a compelling government interest, (2) are necessary to serve the asserted compelling interest, (3) are precisely tailored to serve that interest, and (4) are the least restrictive means readily available for that purpose.  See Hobbs v. County of Westchester, 397 F.3d 133, 149 (2d Cir. 2005) (citations omitted).  If, on the other hand, said restrictions are found to be content-neutral restrictions of the time, place or manner of expression, Defendants may avoid liability if they can prove that, under an intermediate scrutiny test, said restrictions "are reasonable, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information." Mastrovincenzo v. City of New York, 435 F.3d 78, 98 (2d Cir. 2006) (internal citation and quotation omitted).

Here the court determined as a matter of law that the public forums provision in paragraph 2 of Attachment A is a content based restriction on plaintiffs' speech.  The court further found as a matter of law that the provisions in

paragraphs 3.1.2 and 3.1.3 of attachment A, which barred Marinaccio from communications with DOT employees and consultants are content neutral restrictions on plaintiffs' speech. As such, the jury was charged that the only questions for their resolution as to plaintiffs' freedom of speech claim were whether defendants actions passed the strict scrutiny and intermediate scrutiny tests.

In order to prove freedom of association claim under the First Amendment Plaintiffs must establish that Defendants interfered with their right to expressive association, and that such interference was "direct and substantial" or "significant." Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 228 (2d Cir. 1996) (internal citations omitted). Once Plaintiffs meet this burden of proof, Defendants may only avoid liability if they meet the aforementioned strict scrutiny test. See Burt v. Rumsfeld, 354 F.Supp.2d 156, 187 (D. Conn. 2005). The jury was instructed accordingly.

### 1. Qualified Immunity

Defendants argued that even if they violated plaintiffs First Amendment rights, they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In deciding whether Defendants should be granted qualified immunity, the first question to consider is whether the facts alleged, when taken in the light most favorable to Plaintiffs, show that the Defendants' conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). If that question is answered in the

affirmative, the next step is to determine whether the right was clearly established, in other words, "whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. at 2156. Thus, generally public officials will be entitled to qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, *or* (2) it was objectively reasonable for them to believe their acts did not violate those rights." Kerman v. City of New York, 374 F.3d 93, 108 (2d Cir. 2004) (quoting Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721 (1995)) (emphasis added).

It is true that the question of whether a right was clearly established at the relevant time is one of law for the court to decide. See Kerman, 374 F.3d at 108 (citations omitted). However, "the matter of whether a defendant official's conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." Id. at 109 (citations omitted). The actions of a public official "must be viewed as objectively reasonable unless 'no [official] of reasonable competence could have male the same choice in similar circumstances.'" Green v. City of New York, 465 F.3d 65, 83 (2d Cir. 2006) (quoting Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995)). Thus, "[i]f there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury[, but i]f there is no material question of fact, the court decides the qualified immunity issue as a matter of law." Green, 465 F.3d at 83 (citing Kernan, 374 F.3d at 109).

Here the court charged the jury that the foregoing recitation of the law as to freedom of speech and association was clearly established at the time of the

7

incidents giving rise to this action.  The court further instructed the jury that if they find a defendant violated said law, that defendant will still be entitled to qualified immunity if at the time of the violation, he neither knew nor should have known that his actions were contrary to federal law; that he is entitled to qualified immunity only of he did not know what he did was in violation of federal law and if a competent public official could not have been expected at the time to know that the conduct was in violation of federal law.

The jury returned a verdict in favor of plaintiffs as to whether defendants violated plaintiffs' First Amendment rights, but found in favor of defendants on their qualified immunity defense.  Plaintiffs argue that the court should not have charged the jury on the issue of qualified immunity because there were no disputed facts alleged in support of same.  Plaintiffs further argue that the court should direct a verdict in plaintiffs' favor and award them one dollar in nominal damages because no reasonable juror could have found that defendants reasonably believed their conduct was lawful.  Defendants argue that statements by plaintiff Marinaccio and his counsel at the Military Road Contract Review Unit (CRU) meeting as well as subsequent negotiations between counsel for plaintiffs and counsel for the CRU lead defendants to reasonably believe that plaintiffs "did not have a First Amendment problem" with Attachment A.  Because plaintiffs disputed this at trial, defendants contend, the court "obviously" decided that there was a question of fact for the jury to decide, warranting submission of their qualified immunity defense to the jury.  Alternatively, defendants argue that even if the court decides it was error to submit their qualified immunity defense to the jury, defendants are still entitled to qualified immunity because plaintiffs agreed to the terms of Attachment A.

At the outset, the court feels constrained to once again call to defendants'

attention the court's decision regarding summary judgment in this case, wherein the defense of waiver to plaintiffs' First Amendment claims was unambiguously dismissed.  See Marinaccio v. Boardman, 02-CV-831, 2005 WL 928631, at *17 (N.D.N.Y. April 19, 2005).  Therefore, to be clear, the court did *not* conclude that their were questions of fact as to whether defendants reasonably believed plaintiffs waived their First Amendment rights when they negotiated and signed Attachment A.  Questions of fact did exist, however, as to the issues underlying the strict scrutiny and intermediate scrutiny tests to be applied when deciding plaintiffs' freedom of speech and association claims.  Given the testimony regarding plaintiff Marinaccio's prior violent behavior on DOT project sites and his threatening behavior toward DOT employees, a reasonable juror could have concluded that defendants reasonably believed the public forums provision of Attachment A passed the strict scrutiny test and that the provisions preventing plaintiff's communications to DOT employees and consultants passed the intermediate scrutiny test.  Considering that ample evidence exists to support the jury's verdict as to the First Amendment claim, it would be inappropriate for the court to set aside the verdict.  Moreover, there is nothing in the record which would support plaintiffs' claim that the jury's verdict is contrary to the clear weight of the evidence.  Accordingly, plaintiffs' Rule 50 and Rule 59 motion as to their First Amendment claim is denied.

### B.  Tortious Interference With Business Relations

Plaintiffs alleged that defendants tortiously interfered with plaintiffs' relationship with the DOT, resulting in significant damages.  Here, the jury returned a verdict in favor of defendants on this claim.  Plaintiffs now seek judgment as a matter of law as to liability, and a new trial as to damages, or

9

alternatively, a new trial as to liability and damages.

In order to prevail on their claim for tortious interference with prospective advantage, also known as tortious interference with business relations, plaintiffs were required to prove that 1) they had business relations with the DOT; 2) the defendants interfered with those business relations; 3) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendants' acts injured the relationship.  See Lombard v. Booz-Allen & Hamilton, Inc.,  280 F.3d 209, 214 (2d Cir. 2002).  See also  Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108 -109 (2d Cir. 1997); El Greco Leather Prods. Co. v. Shoe World, Inc., 623 F.Supp. 1038, 1044 (E.D.N.Y. 1985).  The jury was charged accordingly.  Moreover, the court instructed the jury that they may only find a defendant liable on this claim if that defendant acted outside the scope of his employment with the DOT, and therefore was capable of interfering with plaintiffs' relationship with the DOT as a third party.  The jury was instructed that an act is outside the scope of a defendant's employment if it was not sufficiently related to the kind of act that the defendant was employed to perform.

In support of their motion plaintiffs contend that the uncontroverted testimony of James Gresens established that defendants interfered with plaintiffs' business relationship with the DOT, and that the jury's verdict in favor of defendants on this claim was therefore contrary to the "overwhelming" proof.  Even if it is true, which decidedly is not the case, that Mr. Gresens' testimony was uncontroverted regarding defendants interference with plaintiffs' relationship with the DOT, as well as their improper purpose for doing so, defendants correctly point out that in order for plaintiffs to have succeeded on this claim, they must have established all four of the aforementioned elements.  Considering the battery of

evidence submitted to the jury regarding plaintiff Marinaccio's prior violent and threatening behavior, a reasonable juror could conclude not only that defendants acted within the scope of their employment when they denied plaintiffs' DOT contract bids, but also that they did not do so with an improper motive.  There being nothing in the record to support a conclusion that the jury's findings must have been the result of "sheer surmise and conjecture," judgment as a matter of law on this claim is clearly not warranted.  Moreover, there is no evidence that a miscarriage of justice or serious erroneous result has occurred here, and therefore, no basis upon which to grant a new trial.  Accordingly, plaintiffs' Rule 50 and Rule 59 motions are also denied regarding their claim for tortious interference with prospective advantage.

### IV.  Conclusion

In accordance with the foregoing, it is ORDERED that plaintiffs' Rule 50 motion for judgment as a matter of law is hereby DENIED.  It is further ORDERED that plaintiffs' alternative motion for a new trial is DENIED.

IT IS SO ORDERED.

DATED:   March 7, 2007
         Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge